Manuel GARCIA, on behalf of himself and others similarly situated, Plaintiff,

v.

PANAMA CANAL COMPANY, a corporation, Defendant.

Civ. No. 5466.

District Court, Canal Zone, Balboa Division.

May 4, 1966.

De Castro & Robles, Balboa, Canal Zone, for plaintiffs.

David J. Markun, Dwight A. McKabney, Whitney E. Smith, Balboa Heights, Canal Zone, for defendant.

CROWE, District Judge.

This action was instituted by the plaintiff, Manuel Garcia, on behalf of himself and all other persons similarly situated (including those specifically named in the complaint) to recover overtime wages due him and them under the provisions of Section 23 of the Act of March 28, 1934 (48 Stat. 522, 5 U.S.C. § 673c), commonly known as the Thomas Amendment, and Section 248, as amended, Title 2, Canal Zone Code. He states that for the period November 6, 1959 through March 17, 1962, he and others similarly situated regularly worked in excess of forty (40) hours a week without receiving overtime compensation in accordance with the provisions of the cited statute and code section.

Plaintiff failed to argue the applicability of 2 Canal Zone Code 248 (now 2 Canal Zone Code § 121) as a basis for his asserted right to overtime pay and defendant's pleas that the instant action did not properly constitute a class action and that it was barred by limitations were abandoned so the sole issue before the court relates to the applicability of the Thomas Amendment.

## FINDINGS OF FACT

1. The defendant, Panama Canal Company, is a corporate agency and instrumentality of the Government of the

United States of America, having its principal offices at Balboa Heights, Canal Zone; the said Company was created by the Panama Canal Company Act of June 29, 1948, c. 706, Section 2, 62 Stat. 1076 (subsequently amended by Act of September 26, 1950, c. 1049, 64 Stat. 1041) as successor to the Panama Railroad Company, which was a corporation organized under an act of the State of New York passed April 7, 1849, and which latter company was wholly owned by the Government of the United States from the year 1905 until its dissolution as a New York corporate entity on June 30, 1948; and at all times relevant to this action the aforesaid Panama Canal Company Act constituted sections 245 to 258 of article 3, chapter 12 of title 2 of the Canal Zone Code 1934, as amended.

2. The period of time covered by plaintiff's claim, as well as that of all persons similarly situated on behalf of whom this suit is also brought, extends from November 6, 1959 through March 17, 1962.

3. After the date March 17, 1962, defendant changed its method of employment and plaintiff, as well as all persons similarly situated, was placed on a 40 hour work week.

4. Counsel for the defendant in oral argument admitted that none of the thousands of employees of the defendant were now required to work in excess of 40 hours during a calendar week without being paid overtime or, in the alternative, were allowed an equivalent amount of compensatory time off during a later 40 hour work week.

5. Plaintiff's claim, and that of all persons similarly situated, is founded on section 248 of title 2 of the Canal Zone Code 1934, as amended, and section 23 of the Act of March 28, 1934 (48 Stat. 522, 5 U.S.C. § 673c), commonly known as the "Thomas Amendment"; the amount claimed is in excess of $500; and the case is within the jurisdiction of this United States District Court insofar as concerns the monetary requirement of section 23 (e) of title 7, Canal Zone Code 1934. For purposes of these findings the phrase "persons similarly situated" means all persons employed at Mindi Dairy who occupied positions listed in categories (1) through (13) in paragraph 14 hereof.

6. The defendant, Panama Canal Company, in accordance with its authority under 2 Canal Zone Code § 66, 76A Stat. 11, has for many years maintained, and still maintains and operates, a dairy facility at a location in the Canal Zone known as Mindi. The land, fixtures and livestock making up the facility include approximately two thousand acres devoted to pasture, more than sixty buildings and other structures, and a dairy herd consisting of approximately 800 cows, 400 calves and 40 bulls. During the period of the claim and prior to May, 1961, the average daily milk production at Mindi Dairy was 1,400 gallons. For the remainder of the claim period, the production was 1,250 gallons daily. The milk so produced was cooled and processed for shipment in bulk to a separate plant (not a part of Mindi Dairy) operated by defendant where it was pasteurized and bottled by personnel not within the class of dairy and farm workers represented in this action by the plaintiff, Garcia.

7. The work done at Mindi Dairy during the claim period included (a) the feeding, physical care and treatment of the animals; (b) the cutting, hauling and storing of grass feed; (c) the maintenance, repair, modification and expansion of the physical plant, machinery, equipment and grounds; (d) the milking of the cows and the processing of the milk for shipment in bulk from the dairy; and (e) the clerical, accounting, mechanical, administrative and medical functions necessary to support the activities enumerated.

8. During the period of the claim, the dairy was under the supervision of two professional veterinarians, licensed in the United States, and two experienced

lead foremen. The rates of pay for these four supervisory positions were established and adjusted from time to time in relation to rates for the same or similar work performed for the United States Government in the continental United States. In addition to these four positions, a force of approximately 100 full-time employees was retained at all times to perform the skilled, semi-skilled and unskilled work required to operate the facility. The rates of pay for all of this latter group of positions were established and adjusted from time to time with reference to local prevailing pay rates and on the basis of other wage-determining factors, including the cost of living.

9. The plaintiff, Manuel Garcia, has been an employee of the defendant, Panama Canal Company, since August 10, 1954, and throughout the period covered by his claim has held a position designated as "milker" at Mindi Dairy. The plaintiff and all others similarly situated were appointed to their positions by authority of the President of defendant Company after their application for employment had been approved.

10. The scope and general nature of the duties which plaintiff was or might have been assigned by defendant during the period of the claim are the following: as a milker, working under general supervision; to wash cows; to milk cows by hand or by machine; to observe sanitary practices and maintain sanitary conditions while working; to turn cows in and out of barns and pastures; to assist in washing out barns; occasionally to assist barn workers in feeding cows; and to perform other related tasks when required to do so.

11. Throughout the period of the claim plaintiff, and all others similarly situated, were assigned to work a regular work week of 48 hours consisting of six days of eight hours each in every calendar week. The eight hours of duty on each workday normally assigned to plaintiff, and to some of those similarly situated, were those extending from 6:30 a. m. to 10:30 a. m. and from 4:00 p. m. to 8:00 p. m. and plaintiff and the others so assigned did generally work the hours as aforesaid except for such days as they were on leave of absence or were otherwise in a non-duty status.

12. Plaintiff, and all others similarly situated, were compensated by defendant throughout the claim period at a fixed hourly rate of basic pay which was increased from time to time and the hourly rate was paid for each of the scheduled 48 hours of the regular workweek when services were performed. Plaintiff, and all others similarly situated, were also compensated at the basic hourly rate for any work performed in excess of 48 hours during a calendar week or, in the alternative, plaintiff, and all others similarly situated, were allowed an equivalent amount of compensatory time off during a later regular 48 hour work week, without loss of compensation, for any such work in excess of 48 hours. Plaintiff, and all others similarly situated, received from defendant no overtime compensation beyond the regular basic hourly rate prescribed for their positions.

13. During the period covered by the claim, plaintiff received the following hourly rates of basic compensation for the periods indicated:

| From | Through | Pay Level | Basic Hourly Rate |
|---|---|---|---|
| Nov. 6, 1959 | Dec. 12, 1959 | Milker | $0.63 |
| Dec. 13, 1959 | Apr. 30, 1960 | Milker M-5(1) | 0.65 |
| May 1, 1960 | June 11, 1960 | Milker M-5(1) | 0.72 |
| June 12, 1960 | Dec. 9, 1961 | Milker M-5(2) | 0.75 |
| Dec. 10, 1961 | Mar. 17, 1962 | Milker M-5(3) | 0.78 |

14. During the period covered by the claim, the rates of basic compensation paid for the positions established at Mindi Dairy fell within the ranges shown below:

| Position | Minimum per hour | Maximum per hour |
|---|---|---|
| (LOCAL WAGE BASE) | | |
| (1) Cattle Attendant | $0.65 | $0.78 |
| (2) Dairy Worker | 0.60 | 0.75 |
| (3) Farm Equipment Operator | 0.79 | 0.82 |
| (4) Farm Equipment Repairman | 0.93 | 0.93 |
| (5) Helper (general) | 0.72 | 0.97 |
| (6) Laborer (dairy) | 0.69 | 0.69 |
| (7) Leader (dairy-field) | 0.91 | 0.96 |
| (8) Leader (dairy-utility) | 0.95 | 1.06 |
| (9) Leader Dairy Worker (field) | 0.96 | 0.97 |
| (10) Leader Milker | 1.01 | 1.06 |
| (11) Maintenanceman | 0.98 | 1.02 |
| (12) Milk Cooling Machine Operator | 0.72 | 0.75 |
| (13) Milker | 0.63 | 0.78 |
| (UNITED STATES WAGE BASE) | | |
| (14) Lead Foreman (dairy) | 3.66 | 3.66 |
| (15) Veterinarian (management) [These rates were $9,256 and $9,981 per annum, respectively.] | 4.46 | 4.80 |
| (16) Veterinarian (management-dairy) [These rates were $11,912 and $12,818 per annum, respectively.] | 5.73 | 6.17 |

———————◆———————

15. The positions occupied by plaintiff and others similarly situated, have not at any time (before, after, or during the period of the claim) been classified positions under the Classification Act of 1949, 63 Stat. 954, as amended, 5 U.S.C. Sections 1071–1153.

16. In the field of federal personnel management there are three generally recognized categories of prevailing-rate positions in Government employment. These are: (a) the wage-board group of craft, skilled, and supervisory workers whose rates traditionally have been based upon wages paid in the United States in corresponding trades and occupations in fields such as construction, transportation, manufacturing, and shipbuilding in private industry; (b) vessel employees who man and operate all the various classes of floating equipment including ocean-going vessels and floating craft on rivers and inland waterways and in harbors, whose rates have traditionally been based upon corresponding jobs in the private maritime industry; and (c) the local-rate group consisting of those employees outside the continental limits of the United States who are paid in accordance with local native prevailing wage rates for the area in which they are employed.

The regular work force of defendant Company included employees in all three of the aforesaid prevailing-rate categories prior to and throughout the claim period.

17. Rates of pay for defendant's employees in the category described in find-

ing 16(a) have been fixed and adjusted from time to time by the President of the defendant Company, after reference to, and upon the recommendation of, the Panama Canal Company Wage Board.

18. The positions occupied by plaintiff and all those similarly situated have been designated in defendant's records, correspondence, pay schedules, and wage-fixing data as *local-rate* or *Canal Zone wage-base* positions. The rates of pay for all of defendant's *local-rate* and *Canal Zone wage-base* positions, including those occupied by plaintiff and all those similarly situated, have been fixed and adjusted from time to time by the President of defendant Company after review by, and upon recommendation of, his staff assistants.

The rates of pay for such positions have been fixed and adjusted from time to time with reference to local prevailing pay rates and on the basis of other wage-determining factors, including the cost of living. The basic compensation for such positions, including those occupied by plaintiff and all others similarly situated, has not at any time been referred to or considered by the Panama Canal Company Wage Board.

19. The descriptive terms *local rate* and *Canal Zone wage-base rate* have reference to the schedule of pay applied to a given class of positions. Such terms do not reflect the citizenship of defendant's employees occupying positions within that class, and citizens of the United States, of Panama, and of other countries were and are included within such class and paid at local rates or Canal Zone wage-base rates. During the period of the claim, however, there were no American citizens employed at the dairy facility in local-rate or Canal Zone wage-base positions.

21. On the basis of a ruling of the rates of pay for positions occupied by plaintiff, and all others similarly situated, were fixed pursuant to the Canal Zone Wage and Employment Regulations issued by the Secretary of the Army. (Throughout the period of the claim, none of the rates of pay received by plain-

tiff, or by others similarly situated or by any of defendant's other *local-rate* employees, has been fixed or adjusted in relation to rates for the same or similar work in the continental United States.)

20. On the basis of a ruling of the Comptroller General of the United States in the Wood decision (A–59991 of April 8, 1935), the defendant since 1935 has considered and treated all of its hourly employees as not subject to the Thomas Amendment.

22. On February 13, 1948, the Comptroller General of the United States rendered an unpublished decision designated B–48393 addressed to the Governor, The Panama Canal. In pertinent part the said decision held that the benefits of the Thomas Amendment were not required to be paid to "alien employees whose rates or wages and hours of labor have not corresponded to the rates of wages and hours of labor prescribed for the regular force of employees of the Panama Canal."

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the case.

2. The Thomas Amendment (§ 23 of the Act of March 28, 1934, 48 Stat. 522, 5 U.S.C. § 673c) is applicable to plaintiff and to the members of the class of those similarly situated.

3. Defendant's president acts as a "wage fixing authority" within the meaning of the Thomas Amendment (irrespective of whether he utilizes an advisory wage board) when he fixes rates of compensation for employees in the trades, crafts, and manual labor occupations.

4. The decisions of the Comptroller General carry great weight, but are not conclusive upon the court. In fact, it is the duty of the court to correct an archaic interpretation of a statute and place on it an equitable meaning that is in keeping with social changes and current employment practices. This is especially true when, as in this case, the language of the statute lends itself bet-

ter to an interpretation that is more just and the defendant has condemned the practice engaged in under the old interpretation by abandoning it.

5. Plaintiff and each member of the class of those similarly situated are respectively entitled to judgment against defendant in an amount equal to the number of hours worked in excess of forty (40) hours in any single work week during the period from November 6, 1959 through March 17, 1962, multiplied by a number equal to one-half times the hourly wage applicable to each member of the class for the period.